**UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL–CIO–CLC; Ronald strait, and Danny O. Stevens, for themselves and others similarly situated, Plaintiffs,**

**v.**

**KELSEY–HAYES COMPANY, et al., Defendants.**

**Case No. 11–15497.**

United States District Court,
E.D. Michigan,
Southern Division.

April 24, 2013.

John G. Adam, Stuart M. Israel, Legghio & Israel, P.C., Royal Oak, MI, for Plaintiffs.

Gregory V. Mersol, Baker & Hostetler, Cleveland, OH, Robert M. Vercruysse, Vercruysse, Murray, Bingham Farms, MI, for Defendants.

***OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [# 37], GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [# 47], DIRECTING DEFENDANTS TO REINSTATE THE PLAINTIFFS' RETIREE HEALTHCARE COVERAGE IN EFFECT UNTIL 2012, FINDING DEFENDANTS' MOTION TO STRIKE [# 59] MOOT AND CANCELLING APRIL 25, 2013 HEARING***

GERSHWIN A. DRAIN, District Judge.

## I. INTRODUCTION

On December 15, 2011, Plaintiffs, Ronald Strait and Danny O. Stevens, for themselves and a class of approximately 400 retirees,[1] along with their Union,

1. On March 18, 2013, 290 F.R.D. 77, 2013 WL 1092862 (E.D.Mich.2013), this Court cer-

United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International, AFL–CIOCLC ("USW"), filed the instant action pursuant to Section 301 of the Labor–Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* Plaintiffs, a class of retirees who worked for Defendant, Kelsey–Hayes, challenge Defendants' unilateral modification of their collectively-bargained lifetime retirement health insurance benefits in January of 2012 and Defendants' assertion of their right to unilaterally reduce, suspend or terminate the promised retirement healthcare benefits in the future. Kelsey–Hayes is a subsidiary of Defendant TRW Automotive Inc., which is a subsidiary of Defendant, TRW Automotive Holdings Corporation.

Presently before the Court is Defendants' Motion for Summary Judgment, filed on January 27, 2013. Also before the Court is Plaintiffs' Motion for Summary Judgment, filed on January 29, 2013 and Defendants' Motion to Strike Plaintiffs' Witness Statements and Declarations Filed in Support of Plaintiffs' Summary Judgment Reply Brief, filed on March 25, 2013. These matters are fully briefed and the Court concludes that oral argument will not aid in their resolution. Accordingly, pursuant to E.D. Mich. L.R. 7.1(f)(2), these matters will be resolved on the briefs.

## II. FACTUAL BACKGROUND

Plaintiffs Strait and Stevens represent a class of retirees who worked at the now closed Kelsey–Hayes automobile parts manufacturing plant in Jackson, Michigan. They were members of USW predecessor labor organizations, which were parties to the 1995, 1999, and 2003 collective bargaining agreements ("CBAs"). Kelsey–Hayes, owned and operated the Jackson plant, and was a party to the relevant CBAs. The 1995, 1999 and 2003 CBAs promise the "Insurance Program" described in Supplements "C" and "C–1" and "made part of" the CBAs "as if set out in full." *See* 1995 CBA, Art. XVII at 100.[2] Specifically, the 1995 Supplement C states in relevant part:

> The Company will establish an amended insurance program, hereinafter referred to as the "Program," a copy of which is attached hereto as Supplement C–1 and made part of this Agreement ..., however ... [i]n the event any conflict between the provisions of the Program and the provisions of this Agreement, the provisions of this Agreement will supersede the provisions of the Program to the extent necessary to eliminate such conflict.

*See* 1995 Supp. C at 1. Supplement C–1 states that "Kelsey–Hayes Company will establish an Insurance Program either through a self-insured plan or under a group insurance policy or policies issued by an insurance company or insurance companies ... as set forth in Articles II and III. *See* 1995 Supp. C–1 at 1. Specifically, Supplement C–1 provides:

> (7) For Retired Employees and Certain Former Employees
>
> The Company shall contribute the full premium or subscription charge for health care coverages continued in accordance with Article III, Section 5, for:
>
> (i) A retired employee and his eligible dependents, if any, provided such retired employee is eligible for benefits under

tified this action as a Rule 23(b)(1) and (b)(2) class action.

2. The 1995, 1999 and 2003 CBAs and Supplements C and C–1 contain identical language.

Article II of the Kelsey–Hayes Hourly–Rate Employees Pension Plan, and;

(ii) An employee and his eligible dependents, if any, terminating at age 65 or older for any reason other than a discharge for cause with insufficient credited services to entitle him to a benefit under Article II of the Kelsey–Hayes Hourly–Rate Employees Pension Plan.

(8) For Surviving Spouses

(i) The Company shall contribute the full premium or subscription charge for health care coverages continued in accordance with Article III, Section 6(b) on behalf of a surviving spouse as defined in Article III, Section 6(b), (1), (2), (3) and (4) and in Article III, Section 6(c) ... and the eligible dependents of any such spouse[.]

*See* 1995 Supplement C–1, Art. I, Sec. 3(b)(7)-(8). Supplement C–1 further states in relevant part:

Section 5. Continuance of Health Care Coverages Upon Retirement or Termination of Employment at Age 65 or Older

(a) The health care coverages an employee has under this Article at the time of retirement or termination of employment at age 65 or older for any reason other than a discharge for cause ... shall be continued thereafter provided that suitable arrangements for such continuation, can be made with the carrier(s).

*Id.*, Art. III, Sec. 5(a). Changes to the Insurance Program may be made only if both Kelsey–Hayes and the Union agree to such changes.

In the event the initiation of any benefit ... does not prove practicable or is not permitted by the plans ..., the Company in agreement with the Union will provide new benefits and/or coverages as closely related as possible and of equivalent value to those not provided.

*See* 1995 Supp. C. at 1.

Before and after the closing of the Jackson plant in 2006, Defendants paid for all retirees' healthcare insurance coverage costs. In fact, this Court has previously noted the continuous company-paid, group insurance provided to Kelsey–Hayes union-represented retirees. *See Hinckley v. Kelsey–Hayes,* 866 F.Supp. 1034, 1043–44 (E.D.Mich.1994) (preliminary injunction granted); *Golden v. Kelsey–Hayes,* 73 F.3d 648, 651 (6th Cir.1996) ("Since the 1960s, as required by collective bargaining agreements (CBAs) in effect at each plant, Kelsey–Hayes has provided health insurance benefits ... to retirees, and to surviving spouses of deceased retirees.")

On September 14, 2011, TRW Automotive wrote to the Jackson plant retirees announcing a "change in our retiree healthcare program effective January 1, 2012." TRW Automotive further advised that group healthcare plans for retirees would be replaced with an individual Health Reimbursement Account ("HRA") funded by the company and providing "funds" for which retirees can use to "purchase one of several individual Medicare policies" and for other "eligible health care expenses." Lastly, the September 14, 2011 letter advised the retirees that "TRW's contribution to the HRA will be reviewed annually and is subject to change" and "TRW retains the right to amend or terminate the HRA."

The Company also sent a booklet, entitled "2012 New Coverage New Choices" addressing the change from existing healthcare coverage commencing on January 1. The booklet states in relevant part:

You are neither vested in your retiree healthcare benefits nor does TRW Automotive intend to vest you in retiree healthcare benefits. To the fullest ex-

> tent permitted by law, TRW Automotive reserves the right to amend, modify, suspend, replace or terminate any of its plans, policies or programs (including the HRA), in whole or in part, at any time and for any reason, by appropriate Company action. For example, TRW Automotive may, at any time, increase, decrease or eliminate the amount that is allocated to your HRA account each year.

On January 1, 2012, Defendants discontinued group coverage insurance for those age 65 and older and replaced it with the HRA funding structure. Defendants credited a "one-time contribution of $15,000" for each retiree and spouse for 2012 and provided a $4,800.00 credit for each retiree and spouse on January 1, 2013. As to 2014 and beyond, Defendants will purportedly consider health care costs, legislative changes and other factors in using their discretion concerning whether to make contributions to the retirees' HRAs in the future.

Under the HRA system, Plaintiffs must use Extend Health [3] to buy their individual health insurance policies from selected carriers. Plaintiffs also pay their HRA premiums directly to the insurance provider and then submit claims to Extend Health for reimbursement. If sufficient support is provided, Extend Health reimburses Plaintiffs from the HRA account. Plaintiffs maintain that the 2012 changes to their healthcare insurance coverage shifted administrative and financial risks and responsibilities to them subjecting them to time-consuming and frustrating administrative burdens, anxiety and uncertainty. Plaintiffs assert that Defendants breached the 1995, 1999 and 2003 CBAs by unilaterally modifying their healthcare benefits in violation of federal labor policy and the ERISA.

## III. LAW & ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward,* 241 F.3d 530, 532 (6th Cir.2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Cox v. Kentucky Dept. of Transp.,* 53 F.3d 146, 149 (6th Cir.1995).

The standard for determining whether summary judgment is appropriate is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir.2003) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Redding,* 241 F.3d at 532 (6th

3. Extend Health is a subsidiary of Towers Watson, the firm which advised Defendants on the 2012 changes. Extend Health does not provide health benefits, rather it is authorized by certain carriers to sell their insurance plans. Extend Health receives commissions from the insurance carriers on every policy it sells to the retirees.

Cir.2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir.2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir.2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252, 106 S.Ct. 2505. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505).

### B. Plaintiffs' Motion for Summary Judgment and Defendants' Motion to Strike

Plaintiffs argue that Defendants' unilateral changes and repudiation of vested healthcare benefits are breaches of the CBAs in violation of federal labor law and ERISA. Plaintiffs rely on the unambiguous terms of the CBAs, as well as Defendants' conduct by words and admissions, and the doctrines of issue preclusion and *stare decisis* in support of summary judgment.

#### *1. Vested Healthcare Benefits under the CBAs*

"Section 301 of the LMRA provides a federal right of action for 'violations of contracts between an employer and a labor organization representing employees.'" *Moore v. Menasha Corp.*, 690 F.3d 444, 450 (6th Cir.2012) (citing 29 U.S.C. § 185). Further, "the LMRA claim also creates a derivative ERISA claim, because the disputed healthcare benefits were agreed upon pursuant to a union negotiated contract." *Id.* (citing *Schreiber v. Philips Display Components Co.*, 580 F.3d 355, 363 (6th Cir.2009)). The core issues are "whether the retirement health care benefits vested for life" and whether they are "fully funded" by the employer. *Yolton v. El Paso Tennessee Pipeline Co.*, 435 F.3d 571, 574 (6th Cir.2006).

"Retiree healthcare-benefit plans, such as those involved here, are welfare-benefit plans; vesting only occurs if the parties so intended when they executed the applicable labor agreements." *Cole v. ArvinMeritor*, 549 F.3d 1064, 1069 (6th Cir.2008). "[A]n employer that contractually obligates itself to provide vested healthcare benefits renders that promise 'forever unalterable.'" *Moore*, 690 F.3d at 450 (citing *Sprague v. GMC*, 133 F.3d 388, 400 (6th Cir.1998)); *see also Noe v. PolyOne Corp.*, 520 F.3d 548, 564 (6th Cir.2008) ("[I]t is not the prerogative of the judiciary to rewrite contracts in order to rescue parties from their 'improvident commitments.'"); *Allied Chemical Workers v. PPG Co.*, 404 U.S. 157, 182 n. 20, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971) ("[V]ested retirement rights may not be altered without the pensioner's consent."); *Yolton*, 435 F.3d at 578 ("the employer's unilateral modification or reduction of [vested] benefits constitutes a LMRA violation."). Unilateral modification of vested healthcare is

unlawful, even where the employer is motivated to reduce costs. *See Noe,* 520 F.3d at 564; *Allied Chemical Workers v. PPG Co.,* 404 U.S. 157, 182 n. 20, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971) ("[V]ested retirement rights may not be altered without the pensioner's consent."); *Yolton,* 435 F.3d at 578 ("[T]he employer's unilateral modification or reduction of [vested] benefits constitutes a LMRA violation.").

In *Yard–Man,* the court explained that "the traditional rules for contractual interpretation" apply to the enforcement of collective bargaining agreements "as long as their application is consistent with federal labor policies." *Int'l Union v. Yard–Man,* 716 F.2d 1476, 1479 (6th Cir.1983). Thus, "the court should first look to the explicit language of the collective bargaining agreement for clear manifestations of intent." *Id.* "[E]ach provision should be construed consistently with the entire document" and the terms "must be construed so as to render none nugatory and avoid illusory promises." *Id.* "Where ambiguities exist, the court may look to other words and phrases in the collective bargaining agreement for guidance. Variations in language used in other durational provisions of the agreement may, for example, provide inferences of intent useful in clarifying a provision whose intended duration is ambiguous." *Id.*

"A court may find vested rights 'under a CBA even if the intent to vest has not been explicitly set out in the agreement.'" *Noe,* 520 F.3d at 552 (quoting *Maurer v. Joy Techs., Inc.,* 212 F.3d 907, 915 (6th Cir.2000)). Where terms are ambiguous, the courts may ascertain intent from "extrinsic" evidence, like bargaining history, "course of conduct," and statements, i.e., company "words and deeds." *Cole v. ArvinMeritor, Inc.,* 516 F.Supp.2d 850, 861–64 (E.D.Mich.2005). Courts also use "extrinsic" evidence to confirm unambiguous intent. *See Cole v. ArvinMeritor, Inc.,* 549 F.3d 1064, 1074 (6th Cir.2008) (affirming that "shall remain in effect" language "creates an unambiguous promise for lifetime healthcare benefits" and alone warrants judgment for retirees, but also noting that the "extrinsic" evidence "weighs heavily" to confirm that promise).

Here, the unambiguous language of the CBAs demonstrates the Plaintiffs' right to vested lifetime retirement health insurance coverage. The CBAs promise "continuance" of the healthcare coverages the employees had "at the time of retirement[,]" that those coverages "shall be continued thereafter" for retirees, their spouses and eligible dependents and that any changes could be made "by mutual agreement between the Company and the Union." This Court has previously held that identical CBA terms unambiguously promise vested, lifetime retiree healthcare benefits. *See Golden v. Kelsey–Hayes Co.,* 954 F.Supp. 1173, 1178–79, 1186 (E.D.Mich.1997); *McCoy v. Meridian Auto. Sys., Inc.,* 390 F.3d 417, 419 (6th Cir.2004); *Hinckley v. Kelsey–Hayes Co.,* 866 F.Supp. 1034 (E.D.Mich.1994); *Helwig v. Kelsey–Hayes Co.,* 857 F.Supp. 1168 (E.D.Mich.1994), aff'd 93 F.3d 243 (6th Cir. 1996), cert. denied, 519 U.S. 1059, 117 S.Ct. 690, 136 L.Ed.2d 613 (1997).

For instance, *Golden* addressed identical CBA terms negotiated by Kelsey–Hayes and the UAW for Kelsey–Hayes plants located in Detroit and Romulus, Michigan. *Golden,* 954 F.Supp. at 1175. The *Golden* court ultimately concluded that notwithstanding extrinsic evidence supporting vested lifetime healthcare benefits, the express language of the CBAs alone warranted judgment for the retirees on their LMRA/ERISA claims. *Id.* at 1188. The CBA language in *Golden,* as in the present case, promised that healthcare coverage at

the time of retirement "shall be continued thereafter." *Id.* at 1186.

In *Hinckley,* Jackson plant retirees and the union brought an LMRA/ERISA action challenging Kelsey–Hayes's change to retirement insurance. *Hinckley,* 866 F.Supp. at 1037. *Hinckley* addressed the CBAs from 1968 through 1991, which immediately preceded, and contained identical language as the 1995, 1999 and 2003 CBAs governing the instant action. *Id.* In concluding that the plaintiff-retirees had demonstrated a strong likelihood of success on the merits of their claim warranting injunctive relief, the *Hinckley* court held:

> There are no express provisions of the collective bargaining agreements that limit the duration of retiree health benefits or that allow Kelsey–Hayes to modify or terminate those benefits at will. Instead, plaintiffs have cited specific provisions that indicate that retiree health benefits will be continued throughout their retirement years, beyond the expiration of any particular collective bargaining agreement. For example, section 5 of Article III of the 1991 agreement states that once an employee has retired or terminated employment at age sixty-five, his health benefits 'shall be continued thereafter.'

*Hinckley,* 866 F.Supp. at 1042.

It should also be noted that recently, in *Kelsey–Hayes Co. and UAW,* AAA case number 54 300 00540 12 (January 18, 2013), Arbitrator Paul E. Glendon addressed virtually identical CBA terms governing employees who retired from the now closed Kelsey–Hayes plant in Detroit, Michigan. Arbitrator Glendon found that the CBA's terms provided those retirees with vested rights to medical plan coverages for their lifetimes. Relying on the CBA's contractual language, he ruled that Kelsey–Hayes breached the CBA by imposing the same HRAs challenged herein.

Accordingly, the Court concludes that the unambiguous language set forth in Supplement C, Supplement C–1 and the CBAs—as found by the *Golden, Hinckley, Helwig* and January 2013 Glendon decision—promised lifetime company-paid retirement health benefits.

### 2. *Collateral Estoppel*

Additionally, the Court finds that Defendants are barred from relitigating the meaning of the CBA terms by the doctrine of collateral estoppel. *Golden* decided affirmatively the same issue before this Court; specifically, whether the "shall be continued" and "full premium" CBA terms unambiguously promise lifetime company-paid retirement health insurance. *Golden,* 954 F.Supp. at 1188. The collateral estoppel doctrine bars a party from relitigating issues decided by that party in earlier litigation. In order for a party to be estopped from relitigating issues decided in an earlier action, the Court must find that the following apply:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Schreiber,* 580 F.3d at 367.

Pursuant to the standard set forth in *Schreiber,* Defendants cannot relitigate whether the CBA language promised lifetime, fully vested retiree healthcare insurance coverage. In *Golden,* the precise issue before this Court—whether the "shall be continued" and "full premium" CBA

terms unambiguously promise lifetime company-paid retirement health benefits—was raised and actually litigated in the prior proceeding. *Id.* at 1183–88. Next, determination of this issue was necessary to the outcome and resulted in a final judgment on the merits in favor of the plaintiff retirees. *Id.* at 1188–89. Lastly, Kelsey–Hayes had the full and fair opportunity to litigate the issue in their briefing in opposition to Plaintiffs' motion for summary judgment. Thus, Defendants are estopped from re-litigating the meaning of the governing CBA terms.

### 3. *Estoppel by Conduct*

Defendants are also estopped from denying that the CBAs promised vested lifetime retirement health insurance based on their conduct. *See Horton v. Ford Motor Co.,* 427 F.3d 382, 388 (6th Cir.2005). The court analyzed identical CBA terms to those present in the 1995, 1999 and 2003 CBAs, rejected Kelsey–Hayes' contrary interpretations and determined that the retiree-plaintiffs would establish that Kelsey–Hayes promised vested lifetime company paid retiree health insurance. *See Helwig,* 857 F.Supp. at 1178. Aware of the 1994 decision, Kelsey–Hayes used identical terms in the 1995 CBA. After the *Golden* decision in 1997, Kelsey–Hayes again used identical CBA terms in the 1999 and 2003 CBAs. Therefore, Defendants are estopped from retroactively reinterpreting the CBA terms "shall be continued thereafter," which was judicially settled in 1994 and again in 1997 and used again in later CBAs.

Vesting is further demonstrated by Defendants' conduct in continuing to pay the health insurance costs for Plaintiffs Strait and Stevens even though both retired under the 1999 CBA, which expired in 2003. Additionally, the company similarly continued health insurance post-expiration and post-closing of the Jackson plant under the 1995, 1999 and 2003 CBAs. Such conduct proves the company promised lifetime fully paid retirement healthcare insurance coverage. Lastly, Defendants' past words and admissions, whether viewed as "course of conduct" or "extrinsic evidence" prove vested healthcare. For instance, during a 1974 strike, Kelsey–Hayes stopped strikers' insurance but continued retiree insurance. The Vice President at that time, Richard Helwig, explained that because Jackson retirees had vested healthcare they were unaffected by CBA expiration and the strike. Helwig also testified in 1994 that the retiree insurance was not terminated during a strike because "retiree insurance was understood to be a lifetime, vested benefit which could not be suspended or reduced." In 1982, the company distributed a Summary Plan Description, which stated that when "you are retired," "all of your Health Care coverages are continued without cost to you." The 1982 SPD further stated "Kelsey–Hayes also pays the full cost of Health Care coverages for surviving spouses and eligible children of deceased pensioners." The 1982 Summary Plan Description was used until at least 1999.

### 4. *Breach of the CBAs*

The Court further concludes that Defendants' unilateral modification of Plaintiffs' retirement health insurance breached the CBAs. The Insurance Program requires either a "self-insured plan" or a "group insurance policy or policies" and that the company pay "the full premium or subscription charge for health care coverages." Defendants repudiated both the "full premium" obligation and the lifetime duration of its promises by replacing fully-paid group insurance with two contributions for 2012 and 2013 and warning that any future contributions will be reviewed annually and are subject to change,

up to and including termination of contributions altogether.

The HRAs shift the risk of healthcare costs from Defendants to Plaintiffs. TRW Automotive's Pension and Benefits Director, Shelly Iacobelli, testified that "the retiree bears the risk of exceeding the $15,000." She further testified that before 2012, healthcare expense risk was borne by the company, but the "risk has now been shifted to the retirees." Further, in place of group coverage, the retirees must now determine when and how to spend their limited HRA funds, and must use Extend Health for the healthcare insurance needs, which has proven burdensome, difficult, frustrating, and time consuming. Further, retirees are required to pay their premiums out-of-pocket and then wait for reimbursement. This HRA funding structure—substituting reimbursement for insurance, replacing comprehensive coverages with capped HRA credit and imposing administration on the retirees in lieu of company administration of the Insurance Program—constitutes a CBA breach. Lastly, this unilateral action was a further breach of the mutual agreement clauses required by the CBAs. *See* 1995 Supp. C ("In the event the initiation of any benefit ... does not prove practicable ..., the Company in agreement with the Union will provide new benefits and/or coverages as closely related as possible and of equivalent value to those not provided.")

Based on the unambiguous CBA terms, Defendants' admissions by words or deeds, and the doctrines of issue preclusion and equitable estoppel, Plaintiffs are entitled to summary judgment in their favor. Accordingly, the Court need not resolve Defendants' Motion to Strike Plaintiffs' Witness Statements and Declarations filed in Support of Their Summary Judgment Reply Brief as the motion is immaterial to the resolution of Plaintiffs' Motion for Summary Judgment. The Court finds that with or without these statements and declarations, Plaintiffs are entitled to judgment in their favor. Accordingly, Defendants' Motion to Strike is MOOT.

### C. Defendants' Motion for Summary Judgment

Defendants offer various arguments in support of their motion for summary judgment, however each argument fails to alter this Court's conclusion that Defendants have breached the CBAs as of January 2012 by replacing group insurance coverage with the HRA funding structure.

As an initial matter, the TRW Defendants assertion that they are not proper defendants is belied by the record. The 2006 plant shutdown agreement is between the union and Kelsey–Hayes Company, Jackson, Michigan Plant and "Kelsey–Hayes Company, a subsidiary of TRW Automotive (hereinafter the "Company"). The principal decision makers regarding retiree healthcare and the HRAs was/is TRW Vice President of Compensation and Benefits, Steve Kiwicz, and TRW Benefits Director Iacobelli, who reports to Kiwicz. Most telling is TRW's FAS 106 forms wherein it must identify "retiree medical benefits liability." The FAS 106 reports use TRW Automotive and TRW Automotive Holdings interchangeably. Further, the September 14, 2011 letter informing Plaintiffs about the changes to their insurance was sent and signed by "TRW Automotive." Thus, Defendants TRW Automotive, Inc. and TRW Automotive Holdings Corporation are properly named as defendants and are liable for the CBA breaches.

Second, Defendants argument that Plaintiffs' claims are not ripe for adjudication is patently false. Plaintiffs are entitled to declaratory, injunctive and "make whole" remedies to which monetary relief is incidentally awarded. *See Golden,* 73

F.3d at 662. As soon as Defendants altered Plaintiffs' benefits for the capped and terminable HRAs, Plaintiffs' ERISA and LMRA claims accrued. *See Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 409 (6th Cir.2010). Defendants omit essential distinguishing features present in *Hawkins v. Howden Buffalo, Inc.*, No. 05–cv–74437, 2012 WL 1079557, *2–3 (E.D.Mich.2012) where the company never implemented its threat to terminate benefits, later rescinded the threat and advised it had no intention to alter retiree benefits in the future. In contrast, Defendants discontinued promised full premium group coverage replacing it with capped and terminable HRAs.

Furthermore, Defendants cannot rely on purported past vendor changes to justify the breach of the CBAs. Such an argument has been soundly rejected by previous decisions of this Court. *Cole*, 516 F.Supp.2d at 873; *see also Hinckley*, 866 F.Supp. at 1042 ("[M]erely because plaintiffs chose not to bring suit on earlier changes does not mean that they have tacitly admitted that their benefits are limited and terminable. Instead, it merely indicates that the substance of the more recent changes have prompted them to seek relief."); *Helwig*, 857 F.Supp. at 1174 n. 2 (tolerating earlier changes does not bar suit on subsequent changes). Additionally, Defendants have failed to come forward with evidence that any past changes resulted in a reduction to Plaintiffs' benefits.

Third, Defendants astonishingly insist that nothing in the CBAs obligates them to pay fully vested lifetime retiree benefits; a premise already rejected by this Court based on the unambiguous CBA language, the doctrine of issue preclusion, as well as Defendants' past conduct. Further, this argument omits any discussion of the five mutual agreement clauses in the CBAs. Rather, Defendants would have this Court find that the CBAs permit the 2012 modification to the retiree health insurance due to federal statutory amendments, or based on the Defendants' judgment that such modification is in the best interests of the retirees. This argument is contrary to the express and unambiguous language of the CBAs.

Contrary to Defendants' assertion, Supplement C, Section 4(b) precludes any CBA modification that would "remove or limit any previously existing coverage." The CBAs further state that any changes "shall be implemented by mutual agreement between the Company and the Union." Ex. 2 at 3. Section 3(c) further states that the "options afforded the Company to select plans provided in Article III of the Program . . . shall be exercised only by mutual agreement between the Company and the Union." Similarly, options afforded the Company concerning supplementation of the Program with state or federally provided benefits "shall not be exercised except by mutual agreement between the Company and the Union." *Id.* Lastly, Supplement C states that if any benefits promised by the Program do "not prove practicable" or are "not permitted[,]" "the Company in agreement with the Union will provide new benefits and/or coverages as closely related as possible and of equivalent value to those not provided." Thus, five mutual agreement clauses in Supplement C contemplate changes to accommodate healthcare evolution and government programs, however any changes must be made with the Union's agreement.

Further, Defendants argument that subsection (h) of Supplement C–1 permitted the 2012 modification and permits future modifications warranted in the exercise of Defendants' fiduciary judgment is belied by the CBAs express language. Subsection (h) by its express language applies to

employees defined as "person[s] regularly employed on a full-time basis in the United States by the Company on an hourly-rate basis." Therefore, subsection (h) does not apply to Plaintiffs. In any event, Supplement C supersedes C–1 and requires any modifications to be made with the Union's consent.

Defendants remaining argument is similarly lacking in merit. Specifically, Defendants maintain that under the standards annunciated in *Reese v. CNH Am. LLC,* 694 F.3d 681 (6th Cir.2012), the modification of Plaintiffs' benefits to an HRA funding structure is reasonable under federal labor policy, therefore in the absence of an LMRA or ERISA violation, Defendants are entitled to judgment in their favor. In *Moore, supra,* like the case herein, the governing CBAs contained mutual agreement limitations. The *Moore* court specifically held that:

> By offering vested healthcare coverage to the retired employees and their spouses, and by agreeing that the CBAs could only be modified on the signed, mutual consent of the parties, Defendant waived its ability to unilaterally alter or terminate Plaintiffs' healthcare coverage.

*Moore,* 690 F.3d at 459. In contrast, the CBAs in *Reese* contained no mutual consent restrictions. Here, as described above, the CBAs permit alteration when the Program's promised benefits do "not prove practicable" or if adjustments are needed to respond to federal and state statutory amendments only upon the consent of Defendants and the Union. The CBAs expressly mandate mutual agreement as opposed to the unilateral modification at issue herein.

## IV. CONCLUSION

Accordingly, the Court concludes that Defendants alteration of the Plaintiffs' healthcare benefits to an HRA funding structure breached the parties' 1995, 1999 and 2003 CBAs in violation the LMRA and ERISA. Defendants' Motion for Summary Judgment is therefore [# 37] DENIED.

Plaintiffs' Motion for Summary Judgment [# 47] is GRANTED. Defendants shall restore the status quo by reinstating the Plaintiffs' healthcare coverage in effect until 2012. Defendants are hereby PERMANENTLY ENJOINED from any further unilateral changes to the retirees' vested lifetime healthcare coverage under the CBAs.

Defendants' Motion to Strike Plaintiffs' Witness Statements and Declarations Filed in Support of Plaintiffs' Summary Judgment Reply Brief [# 59] is MOOT.

Judgment is hereby entered in favor of Plaintiffs. The Court shall retain jurisdiction to determine whether Plaintiffs are entitled to their reasonable attorney fees and costs incurred as a result of bringing the instant action.

SO ORDERED.